THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BROOK ASSEFA,

        Plaintiff,

vs.

Case No. 06-14776

HONORABLE NANCY G EDMUNDS
HONORABLE STEVEN D. PEPE

MATHEW PUTRA,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

      Pro se Plaintiff, Brook Assefa (A 74 161 497), an alien subject to a final order of removal, is suing Matthew Putra, a Deportation Officer with the U.S. Bureau of Immigration and Customs Enforcement ("ICE"). Plaintiff has filed a two-page, handwritten form Complaint alleging that he reported to the ICE Detention and Removal Office in Detroit on August 28, 2006, to get permission to travel out of state, and that "for some unknown reason" he was detained at a local jail facility from August 28, 2006 to September 7, 2006. He also alleges that Officer Putra kicked him after he was detained. Plaintiff seeks damages for emotional and physical damages sustained after he refused to eat or drink in protest over his detention. Plaintiff does not allege jurisdiction under any federal statute.

      On January 3, 2007, Defendant filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Although the Court required Plaintiff to

file a response to Defendant's motion on or before March 22, 2007 (Dkt. #11), no such response was submitted. All pretrial matters were referred to the undersigned on January 5, 2007 (Dkt. #9). For the reasons indicated below, it is **RECOMMENDED** that Defendant's motion to dismiss be **GRANTED.**

**I. BACKGROUND**

Plaintiff Brook Assefa ("Assefa") is a native and citizen of Ethiopia, who has been subject to a final order of removal since 2003 (Dkt. #8, Ex. A-B). Plaintiff entered the United States on July 24,1995, as a visitor for pleasure (Dkt. #8, Ex. C). He subsequently married a United States citizen and obtained conditional resident status. *Id.* After the marriage ended in divorce, Plaintiff lost his legal status and therefore was placed in removal proceedings on September 12, 2000. *Id*. Plaintiff was ordered removed to Ethiopia, in absentia, on April 23, 2003, after he failed to appear at an immigration court hearing (Dkt. #8, Ex. A). The Board of Immigration Appeals denied Plaintiff's appeal on August 28, 2003 (Dkt. #8, Ex. B).

On April 20, 2004, ICE discovered Plaintiff trying to depart the United States for Canada (Dkt. #8, Ex. C). Rather than let him self-deport to Canada, ICE took him into custody to effect his removal to Ethiopia. *Id*. ICE was prepared to release Plaintiff from detention in September 2004 (*see* Dkt. #8, Ex. C-E), but for over a year he refused to leave until November 2005.[1] While Plaintiff was in custody, he often exhibited cantankerous and disruptive behavior, including engaging in hunger strikes for which forced feeding was considered (*See, e.g.*, Dkt. #8,

---

[1] Plaintiff apparently refused to sign the Order of Supervision presented to him in September 2004 (Dkt. #8, Ex. E). On August 15, 2005, Plaintiff finally signed the Order of Supervision but refused to be released from custody (Dkt. #8, Ex. F). He demanded that he be provided money, a job, transportation and a place to live (Dkt. #8, Ex. G)

Ex. H).

As part of the terms of his release, Plaintiff was required to make a good faith effort to obtain travel documents from Ethiopian authorities to travel there, as well as to report to ICE his activities in furtherance of this effort (Dkt. #8, Ex. I). Plaintiff was informed that should he violate any of the conditions of his release, he would be subject to further detention. *Id.*

On August 28, 2006, Plaintiff went to the ICE Detroit Field Office to request permission to leave the state of Michigan and travel to Pennsylvania to visit family (Dkt. #8, Ex. J at ¶ 2; Dkt. #1 at p.1). After approving Plaintiff's request to travel, Officer Putra asked him to return to the ICE office the week after his trip with proof that he was making a good faith effort to obtain travel documents from Ethiopia (Dkt. #8, Ex. J at ¶ 3). Plaintiff feigned ignorance and refused to comply with the request, arguing about his removal order and stating that he wanted to remain in the United States. *Id*. Officer Putra again requested that Assefa at least call the Ethiopian embassy to check on the status of his travel documents. Moreover, he provided Plaintiff with the contact information and use of the ICE office telephone to make the call. *Id.* at ¶¶ 4-5. Plaintiff still refused to contact the embassy or make any effort to secure his travel documents. *Id.*; *see also*, Ex. K at ¶¶ 3-4. Accordingly, Officer Putra's supervisor, Ricardo Wong, instructed Officer Putra to revoke Assefa's Order of Supervision and take Assefa into custody, as is authorized in 8 C. F. R. § 241.4(l)("Release may be revoked . . .when. . .(ii) the alien violates any condition of release."). (Dkt. #8, Ex. J at ¶ 6; Ex. K at ¶¶ 4, 6).

Plaintiff was taken into ICE custody and incarcerated from August 28, 2006, to September 7, 2006 (Dkt. #1 at p. 2). To protest his detention, Plaintiff refused to eat or drink while in custody. *Id.* Plaintiff also alleges that Officer Putra kicked him after he was detained,

but gives no details of the circumstances surrounding the alleged kick. *Id.*

## II. ANALYSIS

### A. Standards Of Review

Fed. R. Civ. P. 12(b)(1) requires that a case be dismissed if the court lacks jurisdiction over the subject matter of the lawsuit. The burden of proving jurisdiction lies with plaintiff. *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266 (6th Cir. 1990). When faced with a challenge to subject matter jurisdiction, the court is not confined to the complaint alone, but is "empowered to resolve factual disputes." *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915, 918 (6th Cir. 1986).

Fed. R. Civ. P 12(b) permits dismissal for "failure to state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even in everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996). "A judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean*, 991 F.2d 1236, 1240 (6th Cir. 1993) (emphasis in original)

4

(quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). *See also, Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987) (liberal Rule 12(b)(6) review is not afforded legal conclusions and unwarranted factual inferences); *Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

    **B.**   **Factual Analysis**

Here, Plaintiff fails to assert any jurisdictional basis for his case so the Court is left to surmise what Plaintiff might be claiming. Yet, even giving his allegations a liberal construction, Plaintiff fails to state a cognizable claim.

    **1.**   *A Bivens Action*

Since Officer Putra was specifically named as the defendant in this case, it is possible that Plaintiff is attempting to pursue a *Bivens* action, which allows individual government employees to be sued for alleged constitutional violations. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Yet, the complaint does not allege any constitutional violation, nor does it specify if Officer Putra is being sued in his individual or official capacity. There is no mention of the U.S. Constitution; there is no reference to "deliberate indifference;" and there is no reference to 42 U.S.C. § 1983. In sum, there are none of the common indicators that Plaintiff is intending to maintain a *Bivens* claim. Accordingly, plaintiff's complaint fails to state a claim under *Bivens*.[2]

---

[2] Even assuming that Plaintiff is attempting to claim that he was the victim of an unreasonable seizure under the Fourth Amendment due to his detention, the existence of probable cause for his detention defeats such a claim. *See Hansel v. Biscard*, 30 F. Supp.2d 981,

5

More importantly, there is no allegation of conduct that rises to the level of a constitutional violation. Plaintiff's bald allegation that he was kicked by Officer Putra after he was detained does not rise to the level of a constitutional violation. Excessive force claims of pretrial detainees are governed by the Due Process Clause. *See Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002).[3] "The Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment," which "is analogous to a convicted prisoner's claim under the Eighth Amendment of cruel and unusual punishment." *Leary v. Livingston County*, 2006 WL 2865213 *1, *6 (E.D. Mich. Oct. 6, 2005)(J. Battani). Thus, even assuming for purposes of this motion that Plaintiff was kicked by Officer Putra as alleged in the Complaint, the proper inquiry is "whether the force used was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Id.* at *7; *Carr v. Deeds*, 453 F.3d 593, 605-606 (4th Cir. 2006). Here, Plaintiff fails to allege any facts regarding the circumstances of the alleged kick so as to permit any inference that the force purportedly used by Officer Putra was malicious

---

985 (E.D. Mich. 1998)("Section 1983 claims predicated on false arrest, false imprisonment, or malicious prosecution fail if probable cause for an arrest is established."); *see also, Wilson v. Layne*, 526 U.S. 603, 609 (1999)(analysis is the same for *Bivens* and § 1983 suits.). Here, it is undisputed that Plaintiff is an alien subject to a final order of removal and that his release from ICE custody was subject to an Order of Supervision which requires that he make a good faith effort to obtain travel documents to effect his removal from the United States (Dkt. #8, Exs. A-B, I). When Plaintiff refused to cooperate with ICE in either calling or writing the Ethiopian embassy to request a travel document, he was in violation of his Order of Supervision. Thus, pursuant to 8 C.F.R. § 241.4(*l*), ICE was allowed to revoke Plaintiff's Order of Supervision and return him to custody. Accordingly, Officer Putra's actions in placing Plaintiff into detention were proper and not a violation of the Fourth Amendment.

[3] Immigration detainees have been considered by courts to be the same as pre-trial detainees. *See, e.g., Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000)("We consider a person detained for deportation to be the equivalent of a pretrial detainee. . . .")

or sadistic, such that it would rise to the level of a constitutional violation. *Id*. In fact, Plaintiff fails to even allege that the kick was unwarranted or unreasonable; he simply says that it occurred (Dkt. #1 at p. 2).

Moreover, Plaintiff does not allege that he suffered any physical injury from the purported kick. The only physical injury that he appears to allege are those stemming from his hunger strike, during which he "stayed without food and water from August 28th, 2006 to September 7th, 2006. . . ." (Dkt. #1 at p. 2). Such lack of physical injury is an indicator of the lack of evidence of excessive force. *See McNair v. Coffey*, 279 F.3d 463, 469 (7th Cir. 2002) (concurring opinion). Accordingly, Plaintiff fails to state a claim for an unconstitutional use of excessive force.

### 2. *Qualified Immunity*

Even assuming that Plaintiff's allegations can be read to involve a constitutional right, as required for a *Bivens* claim, Officer Putra is shielded by qualified immunity. Government officials who perform discretionary functions are generally entitled to qualified immunity from individual liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense and the plaintiff need not anticipate it in the complaint. *Gomez v. Toledo*, 446 U.S. 635 (1980).

Once a defense of qualified immunity is asserted, the plaintiff must respond with "specific, non-conclusory allegations of fact that will enable the district court to determine that

7

those facts, if proved, will overcome the defense of qualified immunity." *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995). A Court faces a two part test when ruling upon a qualified immunity issue. The initial inquiry must be whether, considered in the light most favorable to the party claiming injury, the facts establish that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). If the facts alleged would violate a constitutional right, the second question is whether that constitutional right was clearly established at the time. *Id.*; *Summar v. Bennet*, 1957 F.3d 1054, 1058 (6th Cir. 1998).

In this case, for the same reasons that Plaintiff's complaint fails to state a claim, Officer Putra is entitled to qualified immunity. Officer Putra had probable cause to detain Plaintiff and there is no claim that the purported kick was unreasonable under the circumstances or constituted cruel and unusual punishment. Thus, there is no apparent violation of Plaintiff's constitutional rights. Further, Plaintiff cannot show that at the time of the incident he had a clearly established constitutional right to remain free after violating his Order of Supervision, or to be exempt from any physical touching under any circumstances. Accordingly, Officer Putra is entitled to qualified immunity.

### 3.    *Federal Tort Claims Act*

To the extent that Plaintiff is attempting to claim tortious activity by Officer Putra, a federal law enforcement officer acting in the performance of his duties, Plaintiff's claims are governed by the provisions of the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. ("FTCA").[4]

---

[4] Although the FTCA contains an express exception to the waiver of sovereign immunity for assault and battery, 28 U.S.C. § 2680(h), law enforcement officers are not protected by this exception.

*See, Fishburn v. Brown*, 125 F.3d 979, 981 (6th Cir. 1997). Yet, under the Westfall Act, 28 U.S.C. § 2679(d)(1), where a federal employee is sued for monetary damages arising from a common law tort allegedly committed by the federal employee acting within the scope of his employment, the only proper defendant is the United States. In the instant action, a designee of the Attorney General has certified that Officer Putra was acting within the scope of his employment as Deportation Officer for ICE in connection with the events underlying this lawsuit (Dkt. #8, Ex. M).[5] Officer Putra, therefore, has complete immunity from any purported tort claim.[6]

---

[5] The heart of the Westfall Act lies in Sections 5 and 6. *Arbour v. Jenkins,* 903 F.2d 416, 420 (6th Cir. 1990). Section 5 amends 28 U.S.C. § 2679(b)(1) to provide that the FTCA's remedy against the United States for tortious acts by government employees acting within the scope of their employment "is exclusive of any other civil action or proceeding for money damages . . . against the employee whose act or omission gave rise to the claim." Section 6 implements Section 5's exclusive remedy provision by authorizing the Attorney General to issue a "scope certification." A "scope certification" is a certification that "the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose. . . ." 28 U.S.C. § 2679(d)(2). The Attorney General has delegated this authority to United States Attorneys who make the scope certification determinations in consultation with the Department of Justice. *See* 28 U.S.C. § 510 (Attorney General's delegation authority); 28 C.F.R. § 15.3. When the Attorney General, or his designee, certifies that the employee's actions were within his or her scope of employment, the Westfall Act mandates that the suit "shall be deemed an action against the United States" under the FTCA and "the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2).

[6] Although the United States may be substituted for the defendant as a party in this case, such a substitution would be futile as Plaintiff's complaint is subject to dismissal for failing to exhaust his administrative remedies prior to bringing suit as required by 28 U.S.C. § 2675(a). That section provides in pertinent part:

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have

9

In sum, even if Plaintiff were able to establish jurisdiction, his Complaint fails to state a claim upon which relief may be granted. For this reason, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## III. RECOMMENDATION

For the reasons indicated above, it is **RECOMMENDED** that Defendant's motion to dismiss be **GRANTED.** The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

---

first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

Because Plaintiff does not allege that he has complied with this mandatory jurisdictional prerequisite, nor do the facts bear out such a contention, his Complaint fails as to the United States (*See*, Dkt. #8, Ex. N).

opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: May 31, 2007  s/Steven D. Pepe
Ann Arbor, Michigan  United States Magistrate Judge

CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2007, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: Susan K. DeClercq., and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Brook Assefa, 5640 Poccuset St., Pittsburgh, PA 151217

s/ James P. Peltier
James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church St.
Flint, MI 48502
810-341-7850
pete_peliter@mied.uscourts.gov